IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GENWORTH LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> ARNOLDO ARMENDARIZ, DINH BINH DO, and ANN DO, as Independent Executrix of the Estate of OAHN DO, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CV. NO. SA-12-CV-00328-DAE |

ORDER GRANTING DEFENDANT ARNOLDO ARMENDARIZ'S MOTION
FOR DECLARATORY JUDGMENT ON THE EXISTENCE OF A COMMON
LAW MARRIAGE

The Court finds this matter suitable for disposition without a hearing.

After reviewing Defendant Arnoldo Armendariz's motion, the Court **GRANTS** the

Motion for Declaratory Judgment on the Existence of a Common Law Marriage

("Motion"). ("Mot.," Doc. # 33.)

BACKGROUND

In March 2010, Oanh Do ("the Decedent") applied to Plaintiff

Genworth Life Insurance Company ("Genworth") for $100,000 in insurance

1

coverage on her life. ("Compl.," Doc. # 1 ¶ 7.) The Decedent designated Defendant Arnoldo Armendariz ("Armendariz"), whom she identified as her husband, as the primary beneficiary. (Compl. ¶ 7.) The Decedent and Armendariz authorized Genworth to withdraw premiums from a bank account in Armendariz's name. (Id.)

On March 26, 2010, while the insurance policy was being underwritten, Genworth received a request to change the beneficiary to Dinh Do ("Dinh"),[1] the Decedent's brother. (Id. ¶ 8.) When Genworth issued the policy on April 12, 2010, Dinh was the primary beneficiary. (Id.)

On October 22, 2010, the Decedent died, and on October 27, 2010, Armendariz notified Genworth of her death. (Id. ¶ 9.) On October 29, 2010, Genworth sent Armendariz a letter regarding Dinh's designation as primary beneficiary and seeking certain documents, including a proof of loss physician statement, a certified death certificate, and a Community Property Statement authorizing payment of the policy benefit to Dinh. (Id. ¶ 10.) Armendariz never completed or returned the documents to Genworth. (Id.)

In November 2010, an attorney representing Ann Do ("Ann"), Dinh's

---

[1] Because a number of the parties in this case have the same surname (Do), the Court will refer to them by their first names.

wife, contacted Genworth, claiming that Ann was the named beneficiary under the Decedent's life insurance policy and requesting information regarding the policy. (Id. ¶ 11.)  When Genworth learned that Ann was the proposed executrix of the Decedent's estate, Genworth sought many of the same documents from Ann that it had previously sought from Armendariz.  (Id.)  Between June and August of 2011, Genworth received all but the Community Property Statement from Ann.  (Id.)

On August 23, 2011, Genworth informed Ann that, since the Decedent had listed Armendariz as her husband on the application and Texas is a community property state, Armendariz would have to sign the Community Property Statement waiving his right to any portion of the proceeds from the policy payable under Texas's community property laws.  (Id. ¶ 12.)  In January 2012, Ann's attorney informed Genworth that Ann believed the Decedent and Armendariz had never been legally married, but may have been "common law" husband and wife.  (Id. ¶ 13.)  On March 5, 2012 Genworth paid 50 percent of the policy proceeds, which totaled $52,246.58, to Dinh.  (Id. ¶ 14.)  Genworth reserved the rest, uncertain whether Armendariz has, at a minimum, a claim for reimbursement of the premiums paid for the policy, and fearing that if it paid 100 percent of the policy proceeds to Dinh it would incur multiple liability.  (Id.)

On April 12, 2012, Genworth filed a Complaint in Interpleader with

this Court pursuant to 28 U.S.C. §§ 1335 and 2201. (Compl.) The action was commenced to determine "whether Dinh Do, Ann Do, Armendariz, or third parties presently unknown are entitled to payment of all or part of the remaining Policy proceeds and to thereafter reward the Policy proceeds to the party or parties legally entitled to receive them." (Compl. ¶ 16.) On April 16, 2012, the Court ordered the remaining policy proceeds deposited into the Court's registry. (Doc. # 6.)

On May 31, 2012, Dinh and Ann each filed an Answer to Genworth's Complaint. (Docs. ## 10, 11.) They asserted that, according to the Decedent's will, Armendariz and the Decedent had children together but were never married. (Doc. # 10 ¶ 12.) They also claimed that at the time of the Decedent's death, Armendariz was living in Arizona with another woman. (Id. ¶ 18.) The Answers asked that, in light of the fact that Armendariz was never married to the Decedent, 100 percent of the policy proceeds be paid to Dinh. (Id. ¶ 14.)

On August 15, 2012, Armendariz filed a Motion for Extension of Time. (Doc. # 23.) Armendariz claimed that the papers had been sent to an old address, and as a result he had never been notified of the lawsuit. (Id.) The Court granted the extension, and on September 10, 2012, Armendariz filed an Answer in which he asserted that he was the Decedent's husband at the time of her death, asked for a declaration that they were married, and asked to be granted all policy

proceeds to which he is entitled.  (Doc. # 24.)

On January 2, 2013, Armendariz's attorney filed a document entitled Settlement Agreement, which stated that the parties had agreed to the following distribution of the policy proceeds: Armendariz and Dinh would each receive 50 percent of the policy proceeds, with expenses incurred in these proceedings and the cost of the funeral to be divided equally between them, and each would purchase a Certificate of Deposit for the children in the amount of $10,000.  (Doc. # 27.)  On January 4, 2013, Dinh's attorney filed an Advisory to notify the Court that Dinh had not agreed to the Settlement Agreement.  (Doc. # 29.)  Specifically, the Advisory stated that Dinh and Armendariz had not agreed that each would place $10,000 in trust for the children.  (Id.)

On January 15, 2013, Armendariz filed the instant Motion.  (Mot.) The Motion seeks a declaratory judgment that a common-law marriage existed between Armendariz and the Decedent.[2]  Neither Ann nor Dinh filed a Response in

---

[2] The Federal Declaratory Judgment Act provides that a court may, "upon the filing of an appropriate pleading, . . . declare the rights and other legal relations of any interested party seeking such declaration. . . ."  28 U.S.C. § 2201(a). Generally, a motion is not a pleading.  See Fed. R. Civ. P. 7(a) (listing pleadings as complaints, answers, and third-party complaints); Stryker Corp. v. XL Ins. Am. Inc., No. 1:05-CV-51, 2009 WL 3256081, at *2 (W.D. Mich. Oct. 7, 2009) (observing that a court may not generally grant declaratory relief pursuant to a motion, which is not an appropriate pleading).  However, Armendariz's Answer, which is an appropriate pleading, contains a request for a declaration that he was

Opposition, although the Motion indicates that their attorney expressed opposition. (Mot. at 2.)

On February 13, 2013, the parties filed a Stipulation for Order Granting Interpleader and Dismissal with Prejudice of Plaintiff. (Doc. # 34.) The Stipulation asked that the Court grant Genworth's claim for interpleader and dismiss Genworth with prejudice. (Id.) On February 22, 2013, the Court entered an Order Granting Interpleader and Dismissing Plaintiff with Prejudice. (Doc. # 35.)

## STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

---

the Decedent's husband at the time of her death. (Doc. # 24.) In effect, the instant Motion for Declaratory Judgment asks the Court to grant summary judgment on that issue. Thus, the Court will construe the instant Motion for Declaratory Judgment as a motion for summary judgment on the issue of the validity of Armendariz's alleged marriage to the Decedent. See Okla. Sur. Co. v. Williams, 483 F. Supp. 2d 541, 549 (W.D. Tex. 2006) (construing the plaintiff's motion for declaratory judgment as a motion for summary judgment on the disputed issue).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Id. at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

Armendariz does not indicate whether he seeks declaratory relief under the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.009, or under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. However, the Fifth Circuit has held that the Texas Declaratory Judgment Act is a procedural rule that does not apply in federal court, so Armendariz must be seeking relief pursuant to the Federal Declaratory Judgment Act. See Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998).

To be entitled to declaratory relief under the Federal Declaratory Judgment Act, a plaintiff must allege facts demonstrating that there exists "a

substantial and continuing controversy between the two adverse parties." Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003); see also Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). In this case, there is a substantial and continuing controversy between Armendariz, Dinh, and Ann regarding the validity of Armendariz's marriage to the Decedent. See Motsinger v. Nationwide Mut. Ins. Co., ---F. Supp. 2d---, 2013 WL 360298, at * 4 (D.S.C. Jan. 30, 2013) (holding that a substantial controversy existed where insurance coverage depended upon validity of plaintiff's alleged common-law marriage). Dinh and Ann challenge Armendariz's right to a portion of the policy proceeds or to reimbursement of premiums paid for the policy on the basis that Armendariz was never married to the Decedent. (Doc. # 10 ¶ 16.) The validity of the marriage must, by necessity, be verified by a court before the policy proceeds can be distributed to the appropriate parties.

       To prove the existence of an informal or common-law marriage in Texas, the proponent of the marriage must demonstrate that a man and woman (1) "agreed to be married," (2) "after the agreement lived together in this state as

husband and wife," and (3) "there represented to others that they were married." Tex. Fam. Code § 2.401(a)(2). The proponent must prove all three elements by a preponderance of the evidence, and all three elements must exist concurrently. Small v. McMaster, 352 S.W.3d 280, 282–83 (Tex. App. 2011).

To establish the first element—an agreement to be married—"the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." Eris v. Phares, 39 S.W.3d 708, 714 (Tex. App. 2001). "Proof of an agreement to be married may be made by circumstantial evidence or conduct of the parties," including proof of cohabitation and representations to others that the couple was married. Russell v. Russell, 865 S.W.2d 929, 933 (Tex. 1993).

The second element, that the couple lived together, is satisfied by evidence of cohabitation. "Cohabitation need not be continuous for a couple to enter into a common-law marriage." Small, 352 S.W.3d at 284. The couple must have lived together as husband and wife in Texas. Williams v. Home Indem. Co., 722 S.W.2d 786, 788 (Tex. App. 1987).

The third element, that the couple held themselves out as husband and wife while living in Texas, "may be established by the words and actions of the parties." Eris, 39 S.W.3d at 715. One of the most significant factors in

determining this element is "whether the couple had a reputation in the community for being married." Small, 352 S.W.3d at 285; In re Giessel, 734 S.W.2d 27, 31 (Tex. App. 1987). "Proving a reputation for being married requires evidence that the couple 'consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married.'" Small, 352 S.W.3d at 385 (quoting Danna v. Danna, No. 05-05-00472-CV, 2006 WL 785621, at *2 (Tex. App. Mar. 29, 2006)); cf. Smith v. Deneve, 285 S.W.3d 904, 910 (Tex. App. 2009) ("The element of holding out requires more than occasional references to each other as 'wife' and 'husband.'"). Courts have also considered whether the couple indicated that they were married on federal tax forms or gave a child the father's last name on its birth certificate. Winfield v. Renfro, 821 S.W.2d 640, 649 (Tex. App. 1991).

As evidence of the existence of an informal marriage, Armendariz submitted the following:

- An affidavit executed by Armendariz, which states that he and the Decedent were common-law husband and wife for six years; they first decided to live together as a married couple while living in California in August 2004; they lived in California and Arizona as husband and wife before they moved to Texas in 2009; they have two minor children; and they owned two homes together, one in Arizona and one that they were living in prior to the Decedent's death. (Doc. # 25 Ex. 1.)
- A letter from Probe Information Services, Inc., identifying Armendariz as the Decedent's Next of Kin. (Id. Ex. 2.)

- A photocopy of a birth certificate for Arnold Armendariz, born June 15, 2007 in Phoenix, Arizona, to Arnoldo Armendariz and the Decedent.  (Id. Ex. 3.)
- A photocopy of a birth certificate for Linda Armendariz, born April 14, 2005 in Phoenix, Arizona, to Arnoldo Armendariz and the Decedent.  (Id.)
- An obituary for the Decedent, which states: "Survivors include her . . . common-law husband, Arnoldo Armendariz, [and] children, Linda and Arnold Armendariz. . . ."  (Id. Ex. 4.)
- Federal and state tax returns for the years 2009 and 2010 filed jointly as a married couple by Armendariz and the Decedent, listing their address as 8134 Manderly Place, Converse, TX, 78109, as well as a joint federal tax return for the year 2005 listing their address as 5734 W. Orangewood Ave, Glendale, AZ, 85301.  Also included is a joint federal tax return for 2011 filed by Armendariz and Belinda Roman as a married couple.  (Id. Ex. 5.)
- A photocopy of an Arizona Federal Credit Union check with Armendariz and the Decedent listed as the payers.  (Id.)
- Bank statements from Arizona Federal Credit Union for March 2010 addressed to Armendariz and the Decedent at 13326 Wind Ridge, Helotes, TX, 78023, and from April, September, October, November, and December 2010 addressed to Armendariz and the Decedent at 8134 Manderly Place, Converse, TX, 78109.  (Id. Ex. 6.)
- Affidavits executed by Olga Lincoln ("Olga") and Harvey Horst Lincoln ("Harvey"), which state that Armendariz and the Decedent were Olga and Harvey's neighbors at 8134 Manderly Place in Converse, TX, where the couple lived with their two children, Arnold and Linda Armendariz, from 2010 until the Decedent died and Armendariz moved out; and that Armendariz and the Decedent presented themselves as husband and wife from the time Olga and Harvey first met them, and Olga and Harvey always knew them as husband and wife.  (Id. Ex. 7.)
- An affidavit executed by Alicia Sanchez ("Sanchez"), which states that Sanchez has known Armendariz and the Decedent for seven years; Armendariz and the Decedent lived together at Triple T Mobile Park in Glendale, Arizona; Sanchez saw Armendariz and the Decedent frequently until they moved to Texas in December of 2009; and throughout Sanchez's friendship with Armendariz and the Decedent,

11

       she has always known them as husband and wife.  (Id. Ex. 7.)
- An affidavit executed by Jessica Molina ("Molina"), which states that Molina is married to Armendariz's nephew and has known Armendariz and the Decedent for seven years; that she first met them when they lived together at Triple T Mobile Park in Glendale, Arizona; and that Molina has always known them as husband and wife.  (Id.)

The other parties to this action—Dinh and Ann—did not file a response in opposition to Armendariz's Motion for Declaratory Judgment on the Existence of a Common Law Marriage and have submitted no evidence to the Court to establish the existence of a genuine issue of fact with respect to the alleged common-law marriage.  The Court concludes that the evidence submitted by Armendariz so strongly supports a finding of an informal marriage, no rational trier of fact could find for the non-moving party.

      First, the Court determines that the evidence submitted by Armendariz establishes that there is no genuine dispute that Armendariz and the Decedent agreed to be married.  Armendariz's statement that he and the Decedent decided to live together as common-law husband and wife is evidence of an agreement.  See Giessel, 734 S.W.2d at 32 (proponent's testimony that "she and Giessel had agreed to be married 'in God's eyes' . . . was direct evidence of an agreement").  However, Armendariz's statement indicates that when he and the Decedent agreed to be married, they were living in California, where common-law marriage is not

recognized.  See Menchaca v. Farmers Ins. Exch., 59 Cal. Rptr. 607, 614 (Cal. Ct. App. 1976); see also Frazier v. McKiernan, No. 13-01-00004-CV, 2003 WL 22069790, at *1 (Tex. App. Sept. 4, 2003) (holding that informal marriage did not commence until the couple moved to Texas in 1981, rather than in California in 1972).  Thus, the Court must find that the parties had "an ongoing agreement to be married" that continued after the parties moved to Texas.  Cf. Ballesteros v. Jones, 985 S.W.2d 485, 490 (Tex. App. 1998) (holding that although the couple could not have entered into an agreement to be married when one member of the couple was married to another person, an ongoing agreement to be married that continued after the first marriage ended may be shown by circumstantial evidence).

　　　　The Court finds that the evidence establishes that Armendariz and the Decedent "intended to have a present, immediate, and permanent marital relationship" while living in Texas.  Eris, 39 S.W.3d at 714.  Armendariz's affidavit states that he and the Decedent agreed to live as common-law husband and wife for the six years prior to the Decedent's death, including the period when they were living in Texas.  (Doc. # 25 Ex. 1.)  Furthermore, as the Supreme Court of Texas held in Russell, proof of an agreement to be married may be made by circumstantial evidence such as proof of cohabitation and representations to others that the couple was married.  865 S.W.2d at 933.  After the couple moved to Texas,

they lived together with their children and held themselves out as a married couple, as established by the affidavits of Olga and Harvey Lincoln, the tax returns for the years 2009 and 2010, the bank statements sent to Armendariz and the Decedent, and the Decedent's obituary.  (Doc. # 25 Exs. 4–7.)

The same evidence establishes that there is no genuine issue of material fact with respect to the second and third elements of the test for informal marriage.  Armendariz and the Decedent lived together in Texas, at 8134 Manderly Place in Converse.  The affidavits of Olga and Harvey Lincoln establish that, as well as the joint bank statements sent to that address and the joint tax returns that list that address.  Armendariz and the Decedent also represented that they were married, consistently conducting themselves as husband and wife while living in Texas.  Olga and Harvey Lincoln stated that, from the first time they met Armendariz and the Decedent, the couple introduced themselves as husband and wife.  Armendariz and the Decedent filed joint tax returns as a married couple while living in Texas.  The Decedent's obituary identified Armendariz as her husband.  The Decedent also identified Armendariz as her husband when she applied for the insurance policy at issue in this action.  (Compl. ¶ 7.)  The couple's children bore Armendariz's last name, including during the period when the couple was living in Texas, as evidenced by the couple's tax returns.   Finally, Ann Do,

the Decedent's sister-in-law and executor of the Decedent's estate, informed Genworth that Armendariz and the Decedent might have been common-law husband and wife, so the Decedent's family was aware that the couple held themselves out as such. (Id. ¶ 13.) The Court concludes that Armendariz has shown that there is no genuine dispute as to any material fact regarding the validity of his marriage to the Decedent.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Armendariz's Motion for Declaratory Judgment on the Existence of a Common Law Marriage. (Doc. # 33.)

IT IS SO ORDERED.

DATED: San Antonio, Texas, March 7, 2013.

_____
David Alan Ezra
Senior United States District Judge