IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GENWORTH LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>ARNOLDO ARMENDARIZ, DINH BINH DO, and ANN DO, as Independent Executrix of the Estate of OANH DO,<br><br>    Defendants.<br>_____ | CV. NO. SA-12-CV-00328-DAE |

ORDER GRANTING DEFENDANT ARMENDARIZ'S MOTION FOR
<u>SUMMARY JUDGMENT</u>

      On June 5, 2013, the Court heard Arnoldo Armendariz's Motion for Summary Judgment ("Motion").  ("Mot.," Doc. # 39.)  Rolando L. Rios, Esq., appeared at the hearing on behalf of Arnoldo Armendariz; Joe A. Gamez, Esq., appeared at the hearing on behalf of Dinh Binh Do and Ann Do.  After reviewing the Motion and the supporting and opposing memoranda, the Court **GRANTS** Armendariz's Motion.

BACKGROUND

I.     Background Facts

In March 2010, Oanh Do ("Oanh")[1] applied to Plaintiff Genworth Life Insurance Company ("Genworth") for $100,000 in insurance coverage on her life. ("Compl.," Doc. # 1 ¶ 7.)  Oanh designated Defendant Arnoldo Armendariz ("Armendariz"), whom she identified as her husband, as the primary beneficiary. (Compl. ¶ 7.)  Oanh and Armendariz authorized Genworth to withdraw premiums from a bank account in Armendariz's name.  (Id.)

On March 26, 2010, while the insurance policy was being underwritten, Genworth received a request to change the beneficiary to Dinh Do ("Dinh"), Oanh's brother.  (Id. ¶ 8.)  When Genworth issued the policy on April 12, 2010, Dinh was the primary beneficiary.  (Id.)

On October 22, 2010, Oanh died, and on October 27, 2010, Armendariz notified Genworth of her death.  (Id. ¶ 9.)  On October 29, 2010, Genworth sent Armendariz a letter regarding Dinh's designation as primary beneficiary and seeking certain documents, including a proof of loss physician statement, a certified death certificate, and a Community Property Statement

---

[1] Because a number of the parties in this case have the same surname (Do), the Court will refer to them by their first names.

authorizing payment of the policy benefit to Dinh.  (Id. ¶ 10.)  Armendariz never completed or returned the documents to Genworth.  (Id.)

In November 2010, an attorney representing Ann Do ("Ann"), Dinh's wife, contacted Genworth, claiming that Ann was the named beneficiary under Oanh's life insurance policy and requesting information regarding the policy.  (Id. ¶ 11.)  When Genworth learned that Ann was the proposed executrix of Oanh's estate, Genworth sought many of the same documents from Ann that it had previously sought from Armendariz.  (Id.)  Between June and August of 2011, Genworth received all but the Community Property Statement from Ann.  (Id.)

On August 23, 2011, Genworth informed Ann that, since Oanh had listed Armendariz as her husband on the application and Texas is a community property state, Armendariz would have to sign the Community Property Statement waiving his right to any portion of the proceeds from the policy payable under Texas's community property laws.  (Id. ¶ 12.)  In January 2012, Ann's attorney informed Genworth that Ann believed Oanh and Armendariz had never been legally married, but may have been "common law" husband and wife.  (Id. ¶ 13.)  On March 5, 2012 Genworth paid 50 percent of the policy proceeds, which totaled $52,246.58, to Dinh.  (Id. ¶ 14.)  Genworth reserved the rest, uncertain whether Armendariz has, at a minimum, a claim for reimbursement of the premiums paid

for the policy, and fearing that if it paid 100 percent of the policy proceeds to Dinh it would incur multiple liability.  (Id.)

II.     Procedural History

On April 12, 2012, Genworth filed a Complaint in Interpleader with this Court pursuant to 28 U.S.C. §§ 1335 and 2201.  (Compl.)  The action was commenced to determine "whether Dinh Do, Ann Do, Armendariz, or third parties presently unknown are entitled to payment of all or part of the remaining Policy proceeds and to thereafter reward the Policy proceeds to the party or parties legally entitled to receive them."  (Compl. ¶ 16.)  On April 16, 2012, the Court ordered the remaining policy proceeds deposited into the Court's registry.  (Doc. # 6.)

On May 31, 2012, Dinh and Ann each filed an Answer to Genworth's Complaint.  (Docs. ## 10, 11.)  They asserted that, according to Oanh's will, Armendariz and Oanh had children together but were never married.  (Doc. # 10 ¶ 12.)  They also claimed that at the time of Oanh's death, Armendariz was living in Arizona with another woman.  (Id. ¶ 18.)  The Answers asked that, in light of the fact that Armendariz was never married to Oanh, 100 percent of the policy proceeds be paid to Dinh.  (Id. ¶ 14.)

On August 15, 2012, Armendariz filed a Motion for Extension of Time.  (Doc. # 23.)  Armendariz claimed that the papers had been sent to an old

address, and as a result he had never been notified of the lawsuit.  (Id.)  The Court granted the extension, and on September 10, 2012, Armendariz filed an Answer in which he asserted that he was Oanh's husband at the time of her death, asked for a declaration that they were married, and asked to be granted all policy proceeds to which he is entitled.  (Doc. # 24.)

On January 2, 2013, Armendariz's attorney filed a document entitled Settlement Agreement, which stated that the parties had agreed to the following distribution of the policy proceeds: Armendariz and Dinh would each receive 50 percent of the policy proceeds, with expenses incurred in these proceedings and the cost of the funeral to be divided equally between them, and each would purchase a Certificate of Deposit for the children in the amount of $10,000.  (Doc. # 27.)  On January 4, 2013, Dinh's attorney filed an Advisory to notify the Court that Dinh had not agreed to the Settlement Agreement.  (Doc. # 29.)  Specifically, the Advisory stated that Dinh and Armendariz had not agreed that each would place $10,000 in trust for the children.  (Id.)

On January 15, 2013, Armendariz filed a motion seeking a declaratory judgment that a common-law marriage existed between Armendariz and Oanh. (Doc. # 33.)  Neither Ann nor Dinh filed a response.  The Court granted Armendariz's motion on March 7, 2013, concluding that an informal or common-

5

law marriage existed between Armendariz and Oanh.  (Doc. # 36.)

On February 13, 2013, the parties filed a Stipulation for Order Granting Interpleader and Dismissal with Prejudice of Plaintiff.  (Doc. # 34.)  The Stipulation asked that the Court grant Genworth's claim for interpleader and dismiss Genworth with prejudice.  (Id.)  On February 22, 2013, the Court entered an Order Granting Interpleader and Dismissing Plaintiff with Prejudice.  (Doc. # 35.)

On April 2, 2013, Armendariz filed the Motion for Summary Judgment currently before the Court.  (Mot.)  On April 25, 2013, Dinh filed a Response in opposition.  ("Opp.," Doc. # 40.)  On April 29, 2013, Armendariz filed a Reply in further support of his Motion.  ("Reply," Doc. # 41.)  On May 9, 2013, the Court heard Armendariz's Motion and concluded that it needed supplemental briefing.  Accordingly, Armendariz filed a Memorandum in Support of the Motion for Summary Judgment on May 16, 2013 (doc. # 50), to which Dinh responded on May 30, 2013 (doc. # 51).

LEGAL STANDARD

I.    Summary Judgment

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

   The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Id. at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

Armendariz's Motion states that the Court's "finding of a marriage [in its March 7, 2013 Order] essentially resolves this case and the proceeds filed with the Court should be awarded to the surviving spouse, Mr. Armendariz. . . ." (Mot. at 1.)  In other words, Armendariz asserts that the remaining 50 percent of the insurance policy proceeds that are currently deposited in the Court's registry belong to him as Oanh's common law husband.

Under Texas law, if an insurance policy is community property at the time of the insured spouse's death, the surviving spouse is entitled to half the proceeds as his share of the community estate.  Amason v. Franklin Life Ins. Co., 428 F.2d 1144, 1146–47 (5th Cir. 1970) ("Since the policy was community property, each spouse owned an undivided one-half interest in the policy. . . .").  If an insurance policy is the separate property of the insured spouse, the surviving spouse is only entitled to reimbursement for policy premiums paid out of community funds.  Pritchard v. Snow, 530 S.W.2d 889, 893 (Tex. App. 1975). The Texas Family Code defines "separate property" as "the property owned or claimed by the spouse before marriage" and "the property acquired by the spouse

during marriage by gift, devise, or descent. . . ." Tex. Fam. Code § 3.001. Community property consists of all other property acquired by either spouse during marriage. Tex. Fam. Code § 3.002. Property possessed by either spouse during a marriage is <u>presumed</u> to be community property, and a party seeking to prove that property possessed during marriage is separate property must do so by clear and convincing evidence. Tex. Fam. Code § 3.003.

Thus, as long as the policy in this case was purchased during Armendariz's marriage to Oanh and paid for with community funds, its proceeds constitute community property. See <u>Estate of Cervin v. C.I.R.</u>, 111 F.3d 1252, 1256 (5th Cir. 1997) ("If 'life insurance is purchased during a marriage and paid for with community funds, the 'policy rights' or incidents of ownership and the 'proceeds rights' or the rights to receive the proceeds in the future constitute community property.") (quoting <u>Estate of Cavenaugh v. Comm'r of Internal Revenue</u>, 51 F.3d 597, 602 (5th Cir. 1995)). There is no genuine dispute that the policy was purchased while Armendariz and Oanh were married. In his response to Armendariz's Motion, Dinh claims that Armendariz and Oanh "separated prior to [Oanh] making the initial monthly payment for [the] life insurance policy." (Opp. at 2.) However, Dinh does not submit any evidence in support of this statement, and affidavits submitted by neighbors of Armendariz and Oanh, as well

as Oanh's obituary, demonstrate that they were married and living together when Oanh died.  (Doc. # 25 Exs. 4, 7 at 1–4.)

As for whether the policy was paid for with community funds, there does not appear to be any dispute that the policy premiums were deducted from a community property bank account.  (Compl. ¶ 7; Doc. # 51 at 2 ¶ 2.)  In Ann and Dinh's response to Armendariz's Memorandum in Support of the Motion for Summary Judgment, Ann claims that she "made two deposits into the community property account of Oanh Do and Armendariz on two (2) separate occasions to pay the life insurance policy premiums so that the policy would not be cancelled." (Doc. # 51 at 2 ¶ 2.)  Ann asserts that the deposits were intended to be a gift to Oanh, and as a result, were not community funds.  (Id. at 2 ¶ 3.)  However, Ann does not provide any evidence to support these claims—not even a sworn statement; her assertions are simply presented as argument in the body of the response—and thus fails to rebut the presumption that property possessed during the marriage (here, Armendariz and Oanh's bank account) is community property.  Tex. Fam. Code § 3.003(a).

The Court concludes that there is no genuine issue of material fact as to whether the insurance policy at issue in this case was community property at the

time of Oanh's death, and that Armendariz is therefore entitled to half the proceeds.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Armendariz's Motion for Summary Judgment. (Doc. # 39.) If no appeal is taken within thirty (30) days of the entry of this Order, the Court will enter an Order of Disbursement directing the Clerk's Office to release the funds on deposit in the registry of the court.

IT IS SO ORDERED.

DATED: San Antonio, Texas, June 5, 2013.

_____
David Alan Ezra
Senior United States District Judge